**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                         Case No. 19-CR-416-WJ

JORGE HUMBERTO RUIZ-GOMEZ,

       Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT (Doc. 20)**

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss Indictment. [Doc. 20, filed March 1, 2019]. Having reviewed the parties' briefs and applicable law, and having held an evidentiary hearing, Defendant's Motion is **DENIED**.

**BACKGROUND**

The government has charged Defendant Jorge Humberto Ruiz-Gomez with one count of unlawful reentry of a removed alien in violation of 8 U.S.C. § 1326. In November 2009, Defendant was found by immigration authorities in the custody of the State of Arizona, serving a sentence of 7.5 years for Aggravated Assault. On May 31, 2000, Defendant was served a Notice to Appear ("NTA") that alleged he was subject to removal for being an alien convicted of a crime involving moral turpitude. The NTA states that his hearing would be at "See attached list of IRP Hearing Sites" on a date "to be set" at a time "to be set."

Defendant appeared before an immigration judge on two separate occasions on July 13, 2000 and August 31, 2000. The immigration judge ordered Defendant's removal on August 31, 2000. On February 16, 2006, he was removed from the United States subsequent to serving his state prison sentence. This was Defendant's only removal, and is the removal alleged in the instant

indictment. [Doc. 15]. On October 21, 2018, immigration officials located Defendant in the Curry County Adult Detention Facility and immigration authorities arrested him on November 1, 2018. The indictment was filed February 13, 2019.

## STANDARD

"Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion." *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). When testing an indictment's sufficiency before trial, an indictment's allegations are taken as true, and courts should not consider evidence outside of the indictment. *See id.*

Accordingly, an indictment is legally sufficient so long as it: "(1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to defend against, and (3) enables the accused to plead an acquittal or conviction under the indictment as a bar to any subsequent prosecution for the same offense." *Id.* The Tenth Circuit has, however, carved out an exception to that general rule for cases "where the underlying facts [are] essentially undisputed and the government fail[s] to object to the district court's resort to evidence beyond the four corners of the indictment." *Id.* "Under this scenario, a pretrial dismissal is essentially a determination that, *as a matter of law,* the government is incapable of proving its case beyond a reasonable doubt." *Id.* at 1088 (emphasis in original).

The elements that the government must establish to convict a defendant of an illegal reentry offense are: (1) the defendant was an alien; (2) who has been previously been deported or removed from the United States; (3) and thereafter reentered the United States; (4) without permission. 8 U.S.C. § 1326(a).

A defendant may "mount a collateral attack against a prior deportation order in response to an illegal reentry prosecution," *United States v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010), only if he can establish that he (1) exhausted administrative remedies; (2) was deprived the opportunity for judicial review; and (3) that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d)(1)-(3). "Because a final deportation order enjoys a presumption of regularity," the burden is on the defendant to "prove each of § 1326(d)'s elements to overcome the presumed legality of the earlier deportation order." *Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010). Importantly, Congress enacted 8 U.S.C. § 1326(d) to limit collateral attacks on deportation orders. (H. Rept. 104-22 p. 6, 16). Consequently, such attacks are available only to those defendants who exhausted administrative remedies and can show that they were subject to "procedural errors ... so fundamental that they may functionally deprive the alien of judicial review." *United States v. Aguirre-Tello*, 353 F.3d 1199, 1204 (10th Cir. 2004) (citing *United States v. Mendoza–Lopez*, 481 U.S. 828, 839 n. 17. (1987)).

## DISCUSSION

Defendant presents several arguments all centralized on one issue: whether the NTA was deficient because it did not specify the date and time of the hearing. Defendant argues: (1) the indictment must be dismissed because, as a matter of law, the government cannot establish its case because the NTA was not constitutionally valid; (2) the immigration judge lacked subject-matter jurisdiction to conduct removal proceedings because the NTA was deficient; and (3) he is not required to exhaust his administrative remedies, seek judicial review, or otherwise comply with Section 1326(d) because the NTA was deficient.

## I. Immigration Judge Jurisdiction

Defendant attempts to circumvent the required analysis set forth under Section 1326 by arguing that the immigration judge never had jurisdiction because of the allegedly deficient NTA. The Immigration and Naturalization Act ("INA") authorizes immigration judges to "conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). The INA, however, is silent as to the procedure in which jurisdiction vests in an immigration court. Congress empowered the Attorney General to "establish such regulations" as he or she "determines to be necessary for carrying out" the INA. 8 U.S.C. § 1103(g)(2). These regulations provide that "jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). Charging documents "include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." 8 C.F.R. § 1003.13; *see Ka Cheung v. Holder*, 678 F.3d 66, 67 n.1 (1st Cir. 2012) ("A Notice to Appear is a document that charges an alien with being removable under the INA. The Notice is served on the alien and then filed in immigration court, commencing removal proceedings").

Pursuant to 8 C.F.R. Section 1003.15, the NTA must set forth specific information, such as "the charges against the alien and the statutory provision alleged to have been violated." 8 C.F.R. § 1005.15(b) & (c). The NTA should also include "the time, place and date of the initial removal hearing, where practicable." 8 C.F.R. § 1003.18. If the date and time are omitted in the Notice to Appear, the "Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing." *Id.*; *see Guamanrriga v. Holder*, 670 F.3d 404, 410 (2d Cir. 2012) (noting that "circumstances often arise that make it impracticable for the DHS to provide an alien with the precise date and time of his

initial removal hearing at the moment it serves the initial Notice to Appear, and in these instances, the DHS may indicate in the [Notice to Appear] that it will give the alien subsequent notice . . . once it files the NTA with the appropriate immigration court.") (internal quotation marks and citation omitted).

### a. Deficiency of NTA

The NTA that Defendant received lacked the date and time of the removal hearing. Despite the omission of this information, jurisdiction nevertheless vested on the immigration judge. *See* 8 C.F.R. § 1003.14(a). The NTA does not have to contain the date and time of the removal hearing to trigger the immigration court's jurisdiction. *See Herrera-Orozco v. Holder*, 603 F. App'x 471, 472 (5th Cir. 2015) (affirming immigration judge's holding that "the process by which an alien who has received an NTA is subsequently notified of the date and time of his hearing by a hearing notice is a valid practice that does not negate an Immigration Court's jurisdiction"); *Beltrán-Rodríguez v. Holder*, 530 F. App'x 464, 465 (6th Cir. 2013) ("The BIA also properly determined that the alleged deficiencies in the notices to appear did not deprive the [immigration judge] of jurisdiction because the petitioners were subsequently notified in writing of the time and date of the hearing."); *Dababneh v. Gonzales*, 471 F.3d 806, 808 (7th Cir. 2006) (rejecting defendant's argument "that the [immigration judge] did not have jurisdiction to initiate his removal proceedings because DHS did not specify the date and time of his initial hearing in the NTA"); *Haider v. Gonzales*, 438 F.3d 902, 908 (8th Cir. 2006) (holding that NTA without the date and time "was sufficient to initiate removal proceedings against [the defendant] and thereby vest the Immigration Court with jurisdiction"); *Popa v. Holder*, 571 F.3d 890, 896 (9th Cir. 2009) ("[W]e hold that a Notice to Appear that fails to include the date and time of an alien's deportation hearing,

but that states that a date and time will be set later, is not defective so long as a notice of the hearing is in fact later sent to the alien.").

Despite not having a set date and time specified on the NTA, Defendant nevertheless appeared before an immigration judge on two occasions. Although the parties do not guide the Court with proper documentation, certainly, Defendant must have received notice of the hearings in another manner. Consequently, Defendant's argument regarding the immigration court's purported lack of jurisdiction is unpersuasive.

**b.** **Impact of *Pereira v. Sessions* on Defendant's NTA**

Defendant invokes *Pereira v. Sessions* for the proposition that his allegedly deficient NTA negates the immigration court's jurisdiction. —— U.S. ——, 138 S.Ct. 2105, 201 L.Ed.2d 433 (2018). In simple terms, his argument is that the NTA he received failed to confer jurisdiction on the immigration judge because it did not provide him with a date and time of the hearing, making the NTA deficient, and as a result, the indictment in this case should be dismissed. The Court disagrees with Defendant.

The Court acknowledges that under similar circumstances to this case, some district courts have determined that *Pereira* holds that a deficient NTA would not vest jurisdiction on an immigration judge, and thus, would dismiss the indictment against a defendant. *See United States v. Virgen-Ponce*, 320 F.Supp.3d 1164 (E.D. Wash. 2018); *United States v. Zapata-Cortinas*, No. 18-343, 2018 WL 4770868 (W.D. Tex. Oct. 2, 2018)*; United States v. Ortiz*, No. 18-017, —— F.Supp.3d ——, 2018 WL 6012390 (D.N.D. Nov. 7, 2018); *United States v. Valladares*, No. A-17-CR-00156-SS, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018); *United States v. Ortiz*, 347 F. Supp. 3d 402 (D.N.D. 2018); *United States v. Tzul*, 345 F. Supp. 3d 785 (S.D. Tex. 2018); *United States v. Cruz-Jimenez*, No. A-17-CR-00063-SS, 2018 WL 5779491 (W.D. Tex. Nov. 2, 2018);

*United States v. Lopez-Urgel*, 351 F. Supp. 3d 978 (W.D. Tex. 2018); *United States v. Leon-Gonzalez*, 351 F. Supp. 3d 1026 (W.D. Tex. 2018); *United States v. Armijo-Banda*, 352 F. Supp. 3d 703 (W.D. Tex. 2018); *United States v. Erazo-Diaz*, 353 F. Supp. 3d 867 (D. Ariz. 2018); *United States v. Rodriguez-Rosa*, No. 318CR00079MMDWGC, 2018 WL 6635286 (D. Nev. Dec. 11, 2018).

However, several circuit courts recently have rejected Defendant's argument. *See Mauricio-Benitez v. Sessions*, 908 F.3d 144, 146 n.1 (5th Cir. 2018) (holding that *Pereira* is limited to the cancellation of removal context); *Karingithi v. Whitaker*, 913 F.3d 1158, 1159 (9th Cir. 2019) ("Because the charging document in this case satisfied the regulatory requirements, we conclude the Immigration Judge ("IJ") had jurisdiction over the removal proceedings.");[1] *Hernandez-Perez v. Whitaker,* 911 F.3d 305 (6th Cir. 2018) ("*Pereira*'s emphatically 'narrow' framing" of the question presented demonstrates that its holding does not apply to the distinct question of an Immigration Judge's jurisdiction."); *United States v. Perez-Arellano*, No. 18-4301, 2018 WL 6617703 (4th Cir. Dec. 17, 2018) (unpublished) (applying plain-error review but "disagree[ing] with [the defendant's] assertion that the district court erred at all, much less plainly erred").

Moreover, *Pereira*'s ruling was narrow and only concerns a removable alien's eligibility for cancellation of removal (a form of discretionary relief). 138 S. Ct. at 2110, 2113. That issue is not before this Court.

The Court finds that *Pereira* does not apply under the circumstances of this case, following the reasoning set forth by the abovementioned circuit courts. Therefore, the NTA that Defendant received vested jurisdiction on the immigration judge for Defendant's removal proceedings.

---

[1] The Court emphasizes *Karingithi* from the Ninth Circuit because of its recency. The cases cited by Defendant predate *Karingithi*.

Finally, the Court notes that adopting Defendant's interpretation of *Pereira* would have disruptive consequences. As the Supreme Court explained in *Pereira*, "[DHS], at least in recent years, almost always serves noncitizens with notices that fail to specify the time, place, or date of initial removal hearings whenever the agency deems it impracticable to include such information," including "almost 100 percent" of such notices in the three years preceding the opinion. 138 S. Ct. at 2111. Defendant's interpretation would cast doubts on all removal orders issued and would have significant consequences in this district because of the numerous re-entry cases it handles.

## II. Collateral Attack Pursuant to 8 U.S.C. § 1326(d)

The Court must address whether Defendant has presented a successful collateral attack. As stated above, Defendant must meet three requirements to successfully make a collateral attack: (1) he must have exhausted all available administrative remedies to seek relief against the order; (2) the removal proceedings must have improperly deprived him of the opportunity for judicial review; and (3) the entry of the removal order must have been fundamentally unfair. Defendant argues that since the immigration judge lacked jurisdiction over his immigration case, the removal proceedings "were thus a legal nullity, and it is clear that an order issued in such 'proceedings' is fundamentally unfair[]," and thus, he need not address the first two prongs of the collateral attack. [Doc. 20].

Courts "ordinarily should address the initial test of exhaustion of remedies before going on to the two other tests." *United States v. DeLeon*, 444 F.3d 41, 45 (1st Cir. 2006). To fulfill this requirement, an alien "must have filed a motion to reopen, appealed to the Board of Immigration Appeals, and pursued all other administrative remedies available to him." *United States v. Arita-Campos*, 607 F.3d 487, 491 (7th Cir. 2010).

Defendant states that he never waived his right to an appeal but did not file such an appeal. The Court, having already determined that the immigration judge had jurisdiction, finds that Defendant should have exhausted his remedies and sought judicial review, which he did not. Similarly, Defendant has not demonstrated that the proceedings were fundamentally unfair.

Defendant's collateral attack fails and has not demonstrated that the Government is incapable of proving its case beyond a reasonable doubt. Accordingly, the indictment will not be dismissed.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Indictment, [Doc. 20, filed March 1, 2019], is **DENIED** for the reasons stated in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE